United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FEKRE BEKELE, a.k.a. Fred Bekele, an individual
and CONVENIENT PARKING, L.L.C., a California
Limited Liability Company and IMCO, L.L.C., a
Joint Venture organized as a California Limited
Liability Company, individually and on behalf of
the City and County of San Francisco

    Plaintiffs,

  v.

NATHANIEL P. FORD, SR., a.k.a. Nat Ford,
individually and as Executive Director/Chief
Executive Officer of the San Francisco Municipal
Transportation Agency, CITY AND COUNTY OF
SAN FRANCISCO, and SAN FRANCISCO
MUNICIPAL TRANSPORTATION AGENCY,

    Defendants.
                                                        /

No. C 11-01640 WHA

**ORDER ON MOTION
TO DISMISS THIRD
AMENDED COMPLAINT**

**INTRODUCTION**

In this action concerning a bid for a San Francisco parking-lot management contract, defendants move to dismiss. As to the extent below stated, the motion is **GRANTED**.

**STATEMENT**

Plaintiff IMCO, LLC is a joint venture in which plaintiff Convenient Parking, LLC has an ownership interest. Plaintiff Fekre Bekele is an individual who has an ownership interest in Convenient.

On a motion to dismiss, the well-pled allegations of the operative complaint must be taken as true. In April 2009, the San Francisco Municipal Transportation Agency ("SFMTA") issued a

request for proposal for the operation and management of parking facilities owned by the City and County of San Francisco (Third Amd. Compl. ¶ 32). IMCO submitted its final proposal and bid deposit in June 2009. IMCO was notified "on or about September 21 . . . that it had won the portion of the contract designated 'Group A,' and that work towards finalizing an agreement would begin shortly" (*id.* at ¶ 35). Two other companies, Pacific Park Management ("Pacific") and Five Star Parking ("Five Star"), won smaller portions of the contract (*id.* at ¶ 36).[1]

On September 23, Steven Kay, an attorney for Pacific, sent an email to SFMTA employee Ashish Patel requesting all information regarding the RFP. On the same day, defendant Nathaniel Ford, Executive Director of SFMTA, sent an email to SFMTA staff saying "we need to talk about . . . the RFP results." An SFMTA staff email also mentioned Ford's "concern" regarding the RFP results (*id.* at ¶ 40). SFMTA held meetings "regarding undisclosed matters concerning parking garage facilities on September 28 and October 13" (*id*. at ¶ 42). On October 26, Attorney Kay sent a letter to Ford "requesting that the RFP results be rejected" (*id.* at ¶ 43). "Three days later . . . Pacific donated Five Hundred Dollars ($500.00) to a fund for Dennis Herrera, City Attorney" (*id*. at ¶ 44).

On November 3, the SFMTA Board of Directors passed a resolution "giving Nat Ford power to reject the RFP himself" (*id.* at ¶ 46). The City Attorney's office approved the board's delegation of power to Ford (*id.* at ¶ 47). On November 24, the board was informed that Ford rejected the RFP results to "eliminate performance-based compensation as well as to regroup all parking garage contracts" (*id.* at ¶ 48). SFMTA informed IMCO on November 30 that the RFP results were rejected but did not inform IMCO of the reason for rejection (*id*. at ¶ 49). The next day, IMCO protested rejection of their bid. The SFMTA board requested its staff "provide justification for the rejection of the RFP at the next board meeting" (*id.* at ¶ 52). On December 15, Ford personally retained Attorney Kay to represent him in negotiating his employment contract with the City (*id.* at ¶ 57).

---

[1] "Plaintiffs have sued the San Francisco Municipal Transportation Agency as a defendant separate from the City and County of San Francisco; however [SFMTA] is not a separate entity and is not suable; the correct entity defendant in this action is the City and County of San Francisco. All claims against the SFMTA should be construed as claims against the City and County of San Francisco" (Br. i n.1). This order agrees.

2

Plaintiffs further allege that on December 31, Bekele attended a meeting during which Scott Hutchinson, the Five Star representative, informed him that "if they did not reach an agreement to give up some of the parking garages IMCO had won in the bidding process, that 'they,' [Five Star], had so much 'juice' in the City that they could stall the contract award process or get IMCO's contract rejected altogether" (*id.* at ¶¶ 53, 54). Attorney Kay, also present, stated that Ford authorized him to mediate the meeting, but he did not "*reveal that Nat Ford was also Mr. Kay's client*" (*id.* at ¶ 55) (emphasis in original). Later, Ford confirmed his knowledge of the meeting (*id.* at ¶ 58).

On January 5, 2010, Bekele, Hutchinson, and others met with SFMTA staff and were told that "it was 'in the best interest of the City' to recommend to the SFMTA Board that the contract be awarded as is" (*id.* at ¶ 59). IMCO did not agree to this, believing it to be a "back door deal" that "contravened multiple laws" (*id.* at ¶ 60).

In their motion, defendants contend that plaintiffs strategically omitted facts that are matters of public record (Br. 4–5) (citing RJN Exh. C):

> Defendant Mr. Ford and his staff recommended that the SFMTA Board authorize SFMTA staff to proceed with negotiating and finalizing contracts with IMCO . . . in conformity with the results of the RFP, which would result in IMCO continuing to the next step of the process — entering negotiations for a contract to manage the desired group of parking facilities.

Defendants further contend that SFMTA staff presented a resolution to the SFMTA Board on March 2. "[I]f passed, [it] would have reinstated the results of the RFP." After a vote, it did not pass (Br. 5).

To the contrary, plaintiffs allege that in "retaliation" for IMCO's refusal to acquiesce to the "deal" presented on January 5, Attorney Kay and his clients "improperly lobbied SFMTA officials and Board members to reverse the award, in order to allow the project to be awarded to a company connected to powerful interests in the City" (Third Amd. Compl. ¶ 61). "[D]espite the pressure exerted by . . . Kay's lobbying, SFMTA staff continued to recommend that IMCO receive a contract based on their winning bid" (*id.* at ¶ 62). Plaintiffs allege that Bekele received "direct threats in person, warning that the contract between the City and IMCO would be delayed if he did not agree to a back room deal to privately rearrange the award" (*id.* at ¶ 63).

3

Plaintiffs claim that SFMTA succumbed to Ford's pressure and "unilaterally rescinded the RFP." A new RFP issued. It inured to the benefit of "more well-capitalized bidders such as Pacific and Five Star" because the threshold limits of liquid capital were twice the amount of the same in the initial RFP (*id.* at ¶¶ 64, 65).

Being unaware of campaign contributions, plaintiffs "sought the assistance of the City Attorney" to undertake an investigation in the matter of the RFP. The City Attorney issued a report on March 2, 2011 "absolv[ing] Mr. Ford and all other City officials or employees of any wrongdoing . . . The report was riddled with multiple material errors and falsehoods" (*id*. at ¶¶ 68–69). The City Attorney allegedly should not have participated in the investigation because he had a conflict of interest, which he did not disclose, created by Pacific's "payments to Mr. Herrera's fund" (*id.* at ¶ 68). "To describe the report as a 'whitewash' is an insult to whitewashes," it is said. The report made false accusations of wrongdoing and impropriety against Bekele that caused damage to the livelihood and reputation of each plaintiff in this action (*id*. at ¶¶ 69, 70). The City Attorney made no attempt to verify the accuracy of these accusations even though Bekele had fully cooperated with the investigation (*id.* at ¶ 70).

On June 21, SFMTA approved a "$384,000 payout to Ford" who resigned from the SFMTA effective July 1 (*id.* at ¶ 71). Attorney Kay represented Ford in negotiating the payout. Defendants reply that the payment was in exchange for a "release from Mr. Ford of all claims arising from Mr. Ford's employment contract with SFMTA" (Br. 5).

Instead of seeking a writ of mandate from the state appellate court under state administrative law, plaintiffs Bekele and Convenient filed their initial civil rights complaint here on April 4, 2011, and first amended complaint on April 5. Defendants filed a motion to dismiss plaintiffs' first amended complaint on May 24. Plaintiffs' request for leave to file a second amended complaint was granted on June 10 and defendants' motion to dismiss was denied as moot. Plaintiffs filed a second amended complaint on June 14. Plaintiffs filed a third amended complaint on July 1 and added IMCO as a plaintiff. Defendants were granted leave to file a motion to dismiss and motion to strike. Defendants filed both motions on July 29 and also filed a request for judicial notice regarding the motion to dismiss plaintiffs' third amended complaint.

4

1  Following issuance of an order to show cause for plaintiffs' failure to respond to defendants'
2  motion to dismiss, plaintiffs filed a response, which included the declaration of G. Whitney
3  Leigh, plaintiffs' attorney of record. A true and correct copy of plaintiffs' proposed Fourth
4  Amended Complaint is appended to the declaration as Exhibit A. Defendants did not seek leave
5  to file a fourth amended complaint. That complaint is premature and will not be considered.
6  Defendants filed a reply in support of the motion to dismiss plaintiffs' third amended complaint.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

    1.    **JUDICIAL NOTICE.**

Defendants Ford, Herrera, and the City request judicial notice of documents that are referenced in the third amended complaint or are otherwise undisputed matters of public record. Because these documents are matters of public record and contain adjudicative facts, the Court takes judicial notice of: (1) RFP No. SFMTA2008/09-30, issued by SFMTA on April 10, 2009, appended as Exhibit A to defendants' request for judicial notice; (2) calendar "Item No. 9" brought before the Parking Authority Commission of San Francisco on March 2, 2010, appended as Exhibit C; and (3) Sections 6.102, 8A.102, and 8A.112 of the San Francisco Charter; Sections 21.4 and 21.7 of the San Francisco Administrative Code, and Sections 3.200, *et seq*. of the San Francisco Campaign and Government Code of Conduct, appended as Exhibit J. The defendants' request for judicial notice as to the documents listed above is **GRANTED**.

## 2. REAL PARTY IN INTEREST.

Defendants contend that Bekele and Convenient are not real parties in interest and therefore cannot prosecute this action.[2] Defendants do not dispute that IMCO is a real party in interest.

FRCP 17(a)(1) requires that an "action must be prosecuted in the name of the real party in interest." The real party in interest is the person who has the right to sue under the substantive law. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093–94 (9th Cir. 2004).

For state law claims in a federal action, substantive state law defines the real party in interest. *Glacier Gen. Assurance Co. v. G. Gordon Symons Co., Ltd.*, 631 F.2d 131, 133–34 (9th Cir. 1980). To determine the rights of joint ventures and joint *venturers*, California courts apply the Uniform Partnership Act and general California partnership law. *See Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991) ("The distinction between joint ventures and partnerships is not sharply drawn . . . From a legal standpoint, both relationships are virtually the same. Accordingly, the courts freely apply partnership law to joint ventures when appropriate").

Under California partnership law, "individual partners may not sue for damages to the partnership or their interests in the partnership." *O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044, 1062 (2004). And California Corporation Code Section 16201 states, "[a] partnership is an entity distinct from its partners."

Thus, applying partnership law to joint ventures, as California courts have done and do, logically results in the following: Joint venturers may not sue for damage to the joint venture. And joint ventures are entities distinct from their joint venturers.

Plaintiffs state they formed a joint venture in response to the City "encouraging, if not compelling, the use of joint ventures" (Opp. at 4). Bekele and Convenient claim a "right to participate in a joint venture — and not to be threatened by Pacific, Kay, and Ford." It seems plaintiffs are suggesting that Bekele and Convenient can assert IMCO's rights because they entered into a joint venture at the City's urging (*ibid.*). There is no basis in law to support this argument.

---

[2]Claim twelve is analyzed separately. *See infra* p. 18.

6

Second, plaintiffs allege they are real parties in interest based on "stigma due process," claiming violation of their due process rights because "[d]efendants' rejection of the RFP was accompanied by false accusations of misconduct" (Opp. at 5). But, again, this argument has no basis in law. A "stigma due process" claim must be "made in connection with the termination of employment or the alteration of some right or status recognized by law." *Wenger v Monroe*, 282 F.3d 1068, 1074 (9th Cir. 2002). Plaintiffs allege no such facts.

Finally, plaintiffs allege that defendants violated Bekele and Convenient's rights by rejecting IMCO's "winning bid" for a San Francisco parking-lot management contract (Third Amd. Compl. ¶¶ 1–4).

Bekele and Convenient claim injury resulting from alleged violations of IMCO's rights. IMCO is a joint venture between Imperial Parking Company and Convenient. Because a joint venture is an entity distinct from its joint venturers, Convenient is not the real party in interest to sue for violation of the joint venture's rights. And Bekele, who has an ownership interest in Convenient, is also barred from suing for damages to the joint venture. Thus, Bekele and Convenient are not real parties in interest and do not have a right to sue defendants. Defendants' motion to dismiss Bekele and Convenient's claims one, two, three, four, five, six, seven, eight, nine, ten, and eleven is **GRANTED**.

**3. PLAINTIFF IMCO'S CONSTITUTIONAL CLAIMS.**

Plaintiff IMCO's claims under 42 U.S.C. 1983, 1985, and 1986 are based on alleged violations of IMCO's due process and equal protection rights and its constitutional right to contract.

To state a claim under Section 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated and that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A. Due Process Claim.**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." To establish a substantive or procedural due process violation, a plaintiff must make a "showing of a liberty or property interest protected by

7

the Constitution." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007). Plaintiff alleges "a protectable liberty and property interest in the bidding *process* for the parking contracts and in the contracts to be awarded under the RFP" (Third Amd. Compl. ¶ 75) (emphasis added). Plaintiff has no such interest.

### (1) Protectable Property Interest.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in *mandatory* terms." *Wedges/Ledges of Cal., Inc.*, *v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (emphasis added).

Section 21.4 of the San Francisco Administrative Code governs when SFMTA issues RFPs. The RFP process provides SFMTA with broad discretion to issue and reject RFPs, among other things. Specifically, Section 21.4 provides:

> The Contracting Officer is authorized to negotiate terms and conditions, including price, with the highest ranked Proposer. If the Contracting Officer cannot conclude a contract that, in the opinion of the Contracting Officer is in the City's best interest, the Contracting Officer may terminate negotiations with the highest ranked Proposer.

The RFP at issue explicitly states: "The issuance of this RFP does not constitute a promise or agreement by the SFMTA that the agency will enter into a contract. The SFMTA expressly reserves the right at any time to . . . reject any or all proposals . . . [and] reissue the RFP" (RJN Exh. A at 24). Plaintiff's "unilateral expectation" in a successful negotiation that would result in a contract does not give rise to a protectable liberty interest.

Nevertheless, IMCO contends it has pled a due process interest because "[p]rocedural requirements can give rise to a property interest when they impose significant limitations on the discretion of the decision maker" (Opp. 6) (citing *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)). Plaintiff asserts that the conflict of interest provisions of the Public Reform Act and the Ethics Ordinance create this procedural requirement. They do not. These statutes are ethics laws and do not limit SFMTA's discretion to reject proposals.

8

Plaintiff has not alleged a property interest sufficient to state a due process claim.

### (2) Protectable Liberty Interest.

Plaintiff also alleges a liberty interest in "the bidding process for the parking contracts" (Third Amd. Compl. ¶ 75). Our court of appeals has recognized a liberty interest in pursuing an occupation of one's choice, holding that "a plaintiff can make out a substantive due process claim if [plaintiff] is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist*, 478 F.3d at 997. "[M]erely declining to rehire someone does not infringe on [their] liberty interest in pursuing a career because the person remains free as before to seek another job." *Johnson v. Rancho Santiago Cmty. College Dist.*, 623 F.3d 1011, 1029 (9th Cir. 2010). A "deprivation of plaintiff's ability to practice his profession must be absolute in order to be actionable as a substantive due process violation." *Mitchell Eng'g v. City of San Francisco*, No. 08-04022, 2010 WL 2836952, at *6 (N.D. Cal. Jul. 19, 2010).

Plaintiff IMCO does not allege that it was foreclosed from obtaining future contracts with the City or with other private parking contractors. Thus, plaintiff fails to state a liberty interest sufficient to state a claim for a due process violation.

### (3) Stigma-Plus Theory.

Plaintiff also articulates a stigma-plus theory. In the employment termination context, courts have recognized a liberty interest where the "reason[] for dismissal [is] sufficiently serious to stigmatize or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." *Tibbets v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009).

Under the stigma-plus theory, our court of appeals has stated that due process is violated:

> only if a plaintiff is subjected to a "stigma plus"; *i.e.*, if the state makes a charge against [him] that might seriously damage his standing and associations in the community and 1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law.

Further, one's interest in "reputation standing alone" is not a liberty or property guaranteed against state deprivation without due process of law." *Wenger*, 282 F.3d at 1074.

9

1    Plaintiff IMCO alleges that the "City Attorney's report accused Mr. Bekele of acts of
2 wrongdoing, and impropriety. These accusations were false, and caused damage to Mr. Bekele,
3 Convenient and IMCO's reputation and livelihood" (Third Amd. Compl. ¶ 70). These allegations
4 do not, by themselves, suffice to state a claim. Plaintiff must also allege facts sufficient to show
5 that the accusations were made in connection with the termination of employment or the
6 alteration of some right or status recognized by state law. IMCO does not plead such facts.
7    Thus, plaintiff IMCO fails to state a claim against defendants for a due process violation.

### B. Equal Protection Claim.

Plaintiff IMCO also claims defendants violated its rights under the Equal Protection Clause of the Fourteenth Amendment. To state a claim under Section 1983 for violation of the Equal Protection Clause, plaintiff must "show that the defendants acted with an intent or purpose to discriminate against plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Plaintiff states in the complaint that Bekele "emigrated from Ethiopia" but does not allege that plaintiff was discriminated against due to the fact that Bekele emigrated from Ethiopia (Third Amd. Compl. ¶ 27).

Further, plaintiff alleges an equal protection claim based on a "class-of-one theory." Under this theory, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In *Engquist v. Oregon Department of Agriculture*, the Supreme Court recently revisited the class-of-one theory. The plaintiff, a state employee, alleged that she had been laid off for "arbitrary, vindictive, and malicious reasons." 553 U.S. 591, 595 (2008). As a preliminary matter, the Court explained its "long held view that there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as a lawmaker, and the government acting as proprietor, to manage its internal operation." Indeed, the "government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." The Court reasoned that the government, therefore, "has significantly greater leeway

10

1  in its dealing with citizen employees than it does when it brings its sovereign power to bear on
2  citizens at large." In reaching its decision, the Court was guided by the "common-sense
3  realization that government offices could not function if every employment decision became a
4  constitutional matter." Thus, the Court held that the class-of-one theory "has no application in the
5  public employment context." *Id*. at 598, 599, 607.

6        This order concludes that *Engquist* does not prohibit plaintiff from obtaining relief under a
7  class-of-one theory. In *Engquist*, the Court was careful to distinguish between the government's
8  role as a regulator and licensor versus its role as an employer. Here, the government's role is
9  more akin to a licensor. In fact, the explicit language of the model agreement to the RFP issued
10  April 10, and to which plaintiff responded, stated: "Nothing in this Agreement shall be construed
11  as creating an employment or agency relationship between the SFMTA or City and Manager,
12  [*i.e.*, entity awarded the contract]" (RJN Exh. A at 10). Thus, defendants actions cannot be said
13  to have been made in the "employment context." We now consider the facts pled regarding this
14  claim.

15        IMCO alleges that its bid was rescinded so that defendants could have the opportunity to
16  award the project to a "company connected to powerful interests in the City" (Third Amd. Compl.
17  ¶¶ 61, 64). IMCO is a "locally owned business" that "struggles to compete with the bigger
18  players" (*id.* at ¶¶ 23, 27). Considering all facts in the light most favorable to plaintiff, as we are
19  required to do at this stage, this order concludes that there are sufficient factual allegations to
20  draw a reasonable inference that defendants intentionally treated IMCO differently than other
21  "bigger players" similarly situated and that there was no rational basis for the difference in
22  treatment, and indeed, that the only basis for the discrimination was corruption at City Hall, or so
23  it is alleged. This, if true, was not a rational basis. Plaintiff's equal protection claim against the
24  City, SFMTA, and Ford survives at least on this motion to dismiss.

25        Defendant Ford asserts qualified immunity from suit on all of plaintiffs' federal claims.
26  A determination as to Ford's entitlement to qualified immunity involves a two-pronged inquiry.
27  *First*, a determination whether the factual allegations, viewed in the light most favorable to the
28  plaintiff, demonstrate that the defendant's conduct violated a constitutional right. *Second*, if there

11

was a constitutional right, a determination whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While the "sequence forth [in *Saucier*] is often appropriate, it should no longer be mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The right to equal protection was clearly established in the situation Ford confronted. Defendant Ford is not immune from IMCO's suit on its equal protection claim.

### C. Constitutional Right to Contract Claim.

Plaintiff alleges that defendants deprived IMCO of its "right to contract." "[N]o State shall . . . pass any . . . law impairing the obligations of contracts." U.S. Const. art. 1, § 10. A governmental entity does not unconstitutionally impair a contract if the other party is left with a breach of contract remedy. Indeed, a claim exists under article 1, Section 10 only if a governmental entity eliminates the contract remedy. *University of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1103–04 (9th Cir. 1999). Defendants contend that "[they] did nothing to eliminate [p]laintiffs' remedies for any breach" (Br. 13). Plaintiff fails to respond to this argument and to allege facts sufficient to state a claim for breach of contract.

### D. Section 1985 and 1986 Claims.

Plaintiff does not state a claim under Section 1985 for conspiracy to violate IMCO's civil rights. To bring a cause of action for conspiracy to violate civil rights, plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States . . . *Further, the second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators action.*

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (emphasis added); *see United Bhd. of Carpenters and Joiners of Am.*, 463 U.S. 825, 838 (1983) ("We thus cannot

construe § 1985(3) to reach conspiracies motivated by economic or commercial animus"). Plaintiff fails to state facts sufficient to prove these elements. Namely, plaintiff does not allege that any of defendants' actions were motivated by race or class-based animus. Thus, plaintiff does not state a claim under Section 1985.

Because plaintiff's Section 1985 claim fails, plaintiff cannot state a claim under Section 1986. "Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 971 n.7 (9th Cir. 1994). Plaintiff fails to state a claim for relief under Section 1986.

Thus, defendants' motion to dismiss claim one as to plaintiff IMCO is hereby **DENIED.** Defendants' motion to dismiss claims two and three as to plaintiff IMCO is hereby **GRANTED**.

### 4. PLAINTIFF'S STATE LAW CLAIMS.

Plaintiff IMCO brings state law claims alleging interference with rights, unlawful business practices, negligent and intentional interference with contractual rights and with prospective economic advantage, ethics violations, and illegal and wasteful expenditure of funds.

As a threshold matter, defendants contend plaintiff's state law claims for damages fail because plaintiff did not comply with the Government Claims Act. Prior to filing a damages suit against a public entity, the putative plaintiff must timely file a claim with the appropriate government entity. The California Government Claims Act states: "[N]o suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board." CAL. GOV'T CODE § 945.4.

While "[f]ailure to comply with the mandatory claim requirements is fatal to the cause of action, . . . when the underlying purposes of the claim[] statute[] have been satisfied, the courts should employ a substantial compliance test to determine whether the plaintiff has met the filing requirements." *Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 8 Cal App. 4th 729, 732–733, 734 (1992) (concluding parents could not assert compliance with requirement by relying on their daughter's claim for personal injuries resulting from negligent treatment at a

county hospital because parents were not named as claimants in that claim *and* the claim did not include any description of the alleged injury the parents would later assert). There is substantial compliance if there is "sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." *City of San Jose v. Superior Court of Santa Clara Cnty.*, 12 Cal. 3d 447, 456 (1974).

Plaintiff alleges that "[it] has timely filed a government claim under California Government Code § 901, *et seq.*" (Third Amd. Compl. ¶ 10). And at the motion hearing, plaintiff stated the claim was signed by "claimants." Indulging all reasonable inferences favorable to plaintiff, as we are required to do at this stage, this order is not willing to say that plaintiff did not comply with the Government Claims Act requirements under Section 945.4, as to the state law claims asserted.

### A.    Interference with Rights.

Plaintiff alleges that defendants interfered with its right to due process, equal protection of the laws, and to contract in violation of section 52.1(b) of the California Civil Code. Section 52.1(b) permits an individual to file a civil action for damages, injunctive relief, and other appropriate equitable relief for actions described in Section 52.1(a):

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Pursuant to Section 52.1(a), plaintiff must allege both threats, intimidation, or coercion *and* interference or attempted interference with a constitutional right.

Plaintiff alleges in the third amended complaint that Mr. Hutchinson, Five Star's representative, stated that "if they did not reach an agreement to give up some of the parking garages IMCO had won in the bidding process, that 'they' had 'so much juice in the City' that they could stall the contract award process, or get IMCO's contract rejected altogether"

14

(Third Amd. Compl. ¶ 54). Plaintiff further alleges that "Ford had given [Kay] approval to mediate the meeting" where this statement was made (*id*. ¶ 55).

Plaintiff alleges facts sufficient to state a claim for an equal protection violation against the City, SFMTA, and Ford. *See supra* ¶ 10–12. Thus, defendant Ford and the City's motion to dismiss claim four as to IMCO is **DENIED**.

### B. Unlawful Business Practices.

Plaintiff brings a claim against the City, SFMTA, and Ford for unlawful business practices. California's unfair competition law covers "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The "State of California, its subdivisions or agencies, and other governmental entities are not 'persons' subject to suit under the UCL [section 17200]." *Godoy v. Horel*, No. 09-4793, 2010 WL 890148, at *4 (N.D. Cal Mar. 8, 2010). Thus, the City is not subject to suit under Section 17200 (Opp. at 16 n.4). IMCO does not oppose dismissal of its claim against the City. Thus, the claim only remains as to Ford.

State employees are immune from suit for acts or omissions that are the "result of the exercise of discretion vested in [them], whether or not such discretion be abused." CAL. GOV'T CODE § 820.2. Defendant Ford had discretion to award or not award contracts (Third Amd. Compl. ¶ 46). *See* S.F. ADMIN. CODE § 21.4. Plaintiff contends in its opposition that Section 820.2 does not provide defendants with the discretion to "award municipal contracts in violation of the Political Reform Act or the San Francisco Ethics Code" (Opp. at 16). But the law is clear that Section 820.2 provides immunity "whether or not such discretion be abused."

Thus, plaintiff fails to allege facts sufficient to state a claim under Section 17200, and defendants' motion to dismiss claim five is **GRANTED**.

### C. Intentional and Negligent Interference with Contractual Rights And with Prospective Economic Advantage.

#### (1) Claims Against the City.

Plaintiff brings claims against defendants City, SFMTA, and Ford, for negligent and intentional interference with contractual rights and negligent and intentional interference with prospective economic advantage. "Except as otherwise provided by statute . . . a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or

15

1   a public employee or any other person." CAL. GOV'T CODE § 815. Plaintiff does not allege a
2   supporting statutory basis for these claims. Thus, plaintiff fails to state facts sufficient to state a
3   claim for intentional and negligent interference with contractual rights and with prospective
4   economic advantage. Defendants' motion to dismiss IMCO's claims six, seven, eight, and nine
5   against the City is **GRANTED**.

### (2) Claims Against Defendant Ford.

Defendants argue that Ford cannot be held liable for interfering with plaintiff's contractual rights or economic advantage because "corporate agents and employees acting for and on behalf of a corporation cannot be held liable" (Br. 20) (citing *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990)). But under California Government Code Section 820(a), "Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." Thus, Ford is not immune from liability under *Shoemaker*.

A claim for intentional or negligent interference with contractual rights is premised on there being "a valid contract between plaintiff and a third party." *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008). Nowhere does plaintiff allege a valid contract between plaintiff and a third party. Thus, plaintiff's claims for intentional and negligent interference with contractual rights fail. Defendants motion to dismiss IMCO's claims six and seven against defendant Ford is **GRANTED**.

Under California law, a claim based upon intentional interference with prospective economic advantage requires: (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiffs; (2) defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant. *CRST Van Expedited v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). Interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself. *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 392–93 (2007). The tort of interference with

16

prospective economic advantage does not, however, protect mere "potential" relationships that are "at most a hope for an economic relationship and a desire for a future benefit." *Westside Ctr. Assoc. v. Safeway Stores* 23, Inc., 42 Cal. App. 4th 507, 527 (1996).

With regard to negligence, liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff. "A duty of care may arise through statute or by contract. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979).

IMCO pleads sufficient facts to state a plausible claim for relief on its claims against Ford for intentional and negligent interference with prospective economic advantage (Third Amd. Compl. ¶¶ 2, 21, 35, 38, 42, 46, 57, 58, 64, 69, 105, 106). Thus, defendants' motion to dismiss IMCO's claims eight and nine against defendant Ford is **DENIED**.

### D. California Political Reform Act and San Francisco Government Ethics Ordinance.

Plaintiff contends that defendants Ford and Herrera violated the California Political Reform Act of 1974 and the San Francisco Government Ethics Ordinance because they had an undisclosed financial interest in the decision they made regarding the bid.

This order only addresses these claims as to defendant Ford. The analysis as to defendant Herrera is set forth in another order. (Dkt. 61). Thus, defendants' motion to dismiss claims ten and eleven against Herrera is **DENIED AS MOOT**.

Before bringing a civil action under the CPRA, a putative plaintiff "must first file with the civil prosecutor a written request for the civil prosecutor to commence the action. The request shall include a statement of grounds for believing a cause of action exists." CAL. GOV'T CODE §§ 91004–91007. The complaint does not allege plaintiff's compliance with this pre-suit requirement. Thus, defendants' motion to dismiss claim ten against Ford is **GRANTED**.

The Ethics Ordinance also includes a pre-suit requirement and it applies when injunctive relief is sought. S.F. CAMPAIGN & GOV'T CONDUCT CODE § 3.242(c). Thus, to the extent plaintiff seeks injunctive relief against Ford for violating the Ethics Ordinance, its claim is barred because plaintiff does not allege any facts regarding compliance with the pre-suit filing requirement.

17

Section 3.124 of the Ethics Ordinance requires that a city officer or employee:

> shall disclose on the public record any personal, professional or business relationship with any individual who is the subject of or has an ownership or financial interest in the subject of a governmental decision being made by the officer or employee where as a result of the relationship, the ability of the officer or employee to act for the benefit of the public could reasonably be questioned.

Plaintiff's allegations as to this claim are difficult to comprehend. Plaintiff alleges (Third Amd. Compl. ¶ 57):

> Ford hired Steven Kay to represent him in negotiating his employment contract with the City. At worst, this is a conflict of interest, because Steven Kay was in a position to refuse to help Nat Ford which may lead to him losing his job if he didn't act favorable toward Pacific. At best, it created the appearance of a conflict of interest.

Plaintiff does not articulate how the existence of an attorney-client relationship constitutes a financial interest, and it is unclear from the allegation if this is, in fact, what plaintiff alleges. Plaintiff does not state a claim against defendant Ford for violation of the Ethics Ordinance. Thus, defendants' motion to dismiss claim eleven against defendant Ford is **GRANTED**.

### E. Injunctive and Declaratory Relief.

Plaintiffs Bekele and Convenient assert a claim under Section 526a of the California Code of Civil Procedure as "citizen-taxpayers." "Taxpayer suits are authorized only if the government body has a duty to act and has refused to do so. If it has discretion and chooses not to act, the courts may not interfere with that decision." *Daily Journal Corp. v. Cnty. of Los Angeles*, 172 Cal. App. 4th 1550, 1557–58 (2009). Plaintiffs do not allege that defendants had a legal duty to act. Thus, plaintiffs' claim under Section 526a is dismissed. Defendants' motion to dismiss claim twelve is **GRANTED**.

### CONCLUSION

For the foregoing reasons, and to the extent stated below, defendants' motion to dismiss is **GRANTED**.

Defendants' motion to dismiss Bekele and Convenient's claims one, two, three, four, five, six, seven, eight, nine, ten, and eleven is **GRANTED**. Defendants' motion to dismiss claim one as to plaintiff IMCO is **DENIED**. Defendants' motion to dismiss claims two and three as to plaintiff

18

IMCO is hereby **GRANTED**. Defendant Ford and the City's motion to dismiss claim four as to IMCO is **DENIED**. Defendants' motion to dismiss IMCO's claim five is **GRANTED**. Defendants' motion to dismiss IMCO's claims six, seven, eight, and nine against the City is **GRANTED**. Defendants motion to dismiss IMCO's claims six and seven against defendant Ford is **GRANTED**. Defendants' motion to dismiss IMCO's claims eight and nine against defendant Ford is **DENIED**. Defendants' motion to dismiss claims ten and eleven against Ford is **GRANTED**. Defendants' motion to dismiss claims ten and eleven against Herrera is **DENIED AS MOOT**. Defendants' motion to dismiss claim twelve is **GRANTED**. Leave to amend further is **DENIED**, given the large number of amendments plaintiffs have already employed.

**IT IS SO ORDERED.**

Dated: September 16, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE