IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IMCO, L.L.C., a Joint Venture organized as a
California Limited Liability Company,
individually and on behalf of the City and
County of San Francisco,

    Plaintiff,

  v.

NATHANIEL P. FORD, SR., a.k.a. NAT FORD,
individually and as Executive Director/Chief
Executive Officer of the SAN FRANCISCO
MUNICIPAL TRANSPORTATION AGENCY;
CITY AND COUNTY OF SAN FRANCISCO;
SAN FRANCISCO MUNICIPAL
TRANSPORTATION AGENCY; and DOES
1–50, inclusive,

    Defendants.
                                    /

No. C 11-01640 WHA

**ORDER DENYING
PLAINTIFF'S MOTION
TO DISQUALIFY
CITY ATTORNEY AND
VACATING HEARING**

**INTRODUCTION**

In this civil rights case, plaintiff moves to disqualify the San Francisco City Attorney as counsel for defendants. For the following reasons, plaintiff's motion is **DENIED**.

**STATEMENT**

Plaintiff IMCO, L.L.C. manages parking garages in San Francisco. In April 2009, defendant San Francisco Municipal Transportation Agency issued a request for proposals for the operation and management of parking facilities in San Francisco. In June 2009, IMCO, along with several other companies, submitted a proposal. In September 2009, IMCO learned that it

1  had won a portion of the contract designated "Group A," and that an agreement would be
2  finalized shortly (Third Amd. Compl. ¶¶ 29, 32–34).

3  By winning a portion of the "Group A" contract, IMCO had outbid a number of other
4  companies, including Pacific Park Management and Five Star Parking. Five Star, however, won
5  a portion of "Group B," and Pacific a portion of "Group C." During the month of September,
6  several emails were exchanged between attorney Steven Kay, who represented Pacific, defendant
7  Nathaniel Ford, Director of the SFMTA, and other SFMTA officials discussing reservations
8  about the outcome of the RFP. In late November 2009, IMCO learned that the RFP had been
9  rejected by the SFMTA. On December 31, 2009, the principals from IMCO attended a meeting
10 with representatives from Five Star and Pacific at Attorney Kay's office. The representatives
11 from Five Star and Pacific sought to persuade IMCO to give up some of the parking garages it
12 won in the bid. A representative from Five Star allegedly threatened that if IMCO did not give
13 up the garages, the contract award process would be intentionally stalled (*id.* at ¶¶ 38–41, 49,
14 53–54).

15 Ultimately, IMCO's previously accepted proposal was rejected and another RFP was
16 held. IMCO sought assistance from the City Attorney. An investigation of the SFMTA's
17 actions concluded in March 2011, when the City Attorney issued a report absolving defendants
18 Ford and other City officials from any wrongdoing (*id.* at ¶¶ 64, 68–69).

19 IMCO initiated the present action in April 2011, naming Ford, the City and County of
20 San Francisco, the SFMTA, and City Attorney Dennis Herrera as defendants. IMCO's third
21 amended complaint stated twelve claims for relief (Dkt. No. 24). A September 2011 order
22 dismissed eight claims (Dkt. No. 68). A separate order struck two claims as to defendant Herrera
23 under the California anti-SLAPP statute (Dkt. No. 90).

24 IMCO now moves to disqualify the City Attorney from representing defendants due to an
25 alleged conflict of interest. Defendants argue that IMCO lacks standing to move to disqualify
26 the City Attorney. This order follows full briefing.

27
28

**ANALYSIS**

A complaining party who files a motion to disqualify an attorney must first have standing to do so. *Blue Water Sunset, LLC v. Markowitz*, 195 Cal. App. 4th 477, 486 (2011). The circuits are split on the issue of whether an attorney can be disqualified on the grounds of a conflict of interest by a party who is *not* a current or former client.

**1. THE CIRCUIT SPLIT.**

The general rule adopted in the Fifth, Third, and Eighth Circuits is that an attorney cannot be disqualified unless a current or former client moves for disqualification. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (stating the general rule that only a former client has standing to disqualify an attorney); *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984) (adopting the general rule from *Yarn Processing*); *O'Connor v. Jones*, 946 F.2d 1395, 1400–01 (8th Cir. 1991) (a movant who is not a current or former client has not demonstrated "injury in fact").

Two circuits have adopted a minority view, finding non-clients to have standing to disqualify based on an ethical violation. In the First Circuit, courts look to the Model Code of Professional Responsibility, which requires that an attorney come forward if he has knowledge of an actual or potential disciplinary violation. *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984). Similarly, in the Fourth Circuit, any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court. *United States v. Clarkson*, 567 F.2d 270, 271 n.1 (4th Cir. 1977).

The issue has not directly been addressed in the Ninth Circuit. In *Kasza v. Browner*, the United States Court of Appeals for the Ninth Circuit quoted the general rule from *Yarn Processing*. 133 F.3d 1159, 1171 (9th Cir. 1998). In *Kasza*, however, the issue of standing was not pressed, and the court did not analyze the issue further beyond citing *Yarn Processing*. Ultimately, the court concluded that even assuming the movant had standing, there was no basis for disqualification.

3

### 2. CALIFORNIA LAW.

California law follows the general rule that a party lacks standing to disqualify an attorney unless that party has a present or past attorney-client relationship with that attorney. *Great Lakes Const., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356 (2010). This general rule has been expanded in certain circumstances, and courts have found standing to disqualify if there was a breach of the duty of confidentiality or other fiduciary duty. *Dino v. Pelayo*, 145 Cal. App. 4th 347, 352 (2006). No California court, however, has found standing to disqualify absent some sort of duty — be it attorney-client, duty of confidentiality, or other fiduciary duty.

The majority of circuits, as well as California courts, demand some sort of attorney-client or fiduciary relationship before a party can move to disqualify an attorney. IMCO does not now, nor ever had in the past, an attorney-client relationship with the City Attorney. IMCO does not allege to have had any fiduciary relationship with the City Attorney, nor that a duty of confidentiality was ever owed.

### 3. IMCO DOES NOT HAVE STANDING UNDER ANY EXCEPTION.

IMCO claims it has standing under two different exceptions. *First*, in the Fifth Circuit a party that lacks standing can still bring a motion to disqualify when the ethical violation involved is "manifest and glaring" and "open and obvious and confronting the Court with a plain duty to act." *Yarn Processing*, 530 F.2d at 89. *Second*, IMCO urges this Court to follow the reasoning in the district court decision of *Colyer v. Smith*, which held that a non-client may move for disqualification "where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims." 50 F. Supp. 2d 966, 971–72 (C.D. Cal. 1999).

IMCO, however, offers nothing in support of the proposition that the alleged ethical violation here is "manifest and glaring," nor that IMCO's interests are impacted in any way. IMCO claims that a conflict of interest prohibits the City Attorney from representing both the City of San Francisco and defendant Ford. IMCO does not clearly state how the interests of the City and those of Ford conflict. Under California Government Code Section 825(a), the City must defend Ford against claims or injuries arising out of any acts within the scope of his official

4

1 employment, and must indemnify him against any judgment against him or any settlement
2 reached. It appears that the City and Ford share the interest of seeing Ford succeed in the present
3 litigation, as the City must indemnify him against any adverse judgment.

4     The only possible grounds for a conflict of interest IMCO identifies is an alleged
5 violation of Section 6.102 of the San Francisco City Charter, which would prohibit the City
6 Attorney from representing Ford if a "cause of action exists in favor of the City and County
7 against" Ford. IMCO argues that the City has a cause of action against Ford because he violated
8 Section 3.214 of the San Francisco Ethics Ordinance by failing to disclose a "professional or
9 business relationship" with Attorney Kay — an "individual who [was] the subject of or [had] an
10 ownership or financial interest in the subject of a governmental decision."

11     Ford made the decision to throw out the RFP in late November 2009 (Third Amd. Compl.
12 ¶¶ 48–49). Ford hired Attorney Kay for advice on an employment matter in mid-December 2009
13 (Ford Decl. ¶ 3). Ford had no "professional relationship" with Attorney Kay when he made his
14 governmental decision, thus he did not violate Section 3.214 of the Ethics Ordinance.

15     IMCO argues that Ford violated Section 3.214 because he was represented by Attorney
16 Kay when the December 2009 meeting at Attorney Kay's office took place. IMCO insinuates
17 that Ford was responsible for pressuring IMCO to give up several of the parking lots won in the
18 bid (Reply Br. 2). Ford was not present at this meeting — which was held in a private, not
19 governmental, setting. IMCO fails to show how Ford made a "governmental decision" involving
20 a private meeting he did not attend.

21     IMCO also argues in its reply brief that in early January 2010, Ford made a governmental
22 decision "to reverse his decision to reject the award and instead to recommend its approval"
23 (*ibid*). The only other reference to this fact is in IMCO's motion to disqualify, stating that "Ford
24 settled on a plan to submit the RFP to the board for approval, as opposed to rejection" (Br. 14).
25 In support of this assertion, plaintiff cites to an email sent from Bond Yee, an SFMTA official, to
26 Ford on January 4, 2010 (Leigh Exh. R). The email does not, however, indicate that *Ford* was
27 the one to decide to submit the RFP to the board rather than reject it. In the operative language
28

5

of the brief email, Yee wrote, "now that *we're* going forward with the awards" in discussing scheduling meetings. Nothing in the correspondence suggests that it was Ford's decision alone.

Plaintiff has failed to show any conflict of interest between Ford and the City — let alone one glaring enough to excuse IMCO's lack of standing. Accordingly, plaintiff's motion to disqualify the City Attorney is **DENIED**.

### 4. PLAINTIFF'S REASSERTION OF ITS SECTION 526 CLAIM.

Plaintiff raises for the first time in its reply brief a new argument. IMCO argues that it has standing because the claim based on California Civil Code Section 526 — which was dismissed by the September 2011 order — "was brought in a representative capacity on behalf of the citizens and taxpayers of San Francisco and [plaintiff] had separate standing to seek disqualification on their behalf" (Reply Br. 5).

"Issues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996). Plaintiff cannot rely on arguments raised for the first time in its reply brief involving claims previously dismissed. Further, in its reply brief, plaintiff references a précis in support of motion for leave to amend to reassert the Section 526 claim, claiming that plaintiff submitted the précis "concurrently with this motion." No such filing has been made.

### 5. REQUESTS FOR JUDICIAL NOTICE AND OBJECTION TO EVIDENCE USED.

Both plaintiff and defendants request that judicial notice be taken of several items. A judicially noticed fact must be one not generally subject to reasonable dispute that is either generally known within this territorial jurisdiction or is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FRE 201(b). Plaintiff requests that judicial notice be taken of the following items: (1) Sections 6.102, 8A.102 and 8A.112 of the San Francisco Charter; (2) Sections 21.4 and 21.7 of the San Francisco Administrative Code; (3) Sections 3.200, *et seq.* of the San Francisco Campaign and Governmental Conduct Code; and (4) Sections 3.214-1 through 3.214-6 of the Ethics Commission Implementing Regulations. All of these items are documents of public record. Accordingly, plaintiff's request for judicial notice is **GRANTED**.

6

Defendants request that judicial notice be taken of the following items: (1) Sections 3.214 and 3.242 of the San Francisco Campaign and Governmental Conduct Code; and (2) California Rule of Professional Conduct 3-600. These items are likewise matters of public record. Defendants' request for judicial notice is thus **GRANTED**.

Defendants also object to evidence used in support of plaintiff's motion. As none of the evidence listed was used in deciding this motion, defendants' objection is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to disqualify the City Attorney is **DENIED**. Plaintiff's and defendants' requests for judicial notice are **GRANTED**. Defendants' objection to evidence used is **DENIED AS MOOT**. The hearing scheduled for November 3 is **VACATED**.

**IT IS SO ORDERED.**

Dated: October 27, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE